# IN THE SUPREME COURT OF TEXAS

No. 16-0773

WALLACE L. HALL, JR., IN HIS OFFICIAL CAPACITY AS A REGENT FOR THE UNIVERSITY OF TEXAS SYSTEM, PETITIONER,

v.

WILLIAM H. MCRAVEN, IN HIS OFFICIAL CAPACITY AS CHANCELLOR FOR THE UNIVERSITY OF TEXAS SYSTEM, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE LEHRMANN, concurring.

> "*[T]he secret of Education lies in respecting the pupil.*"[1]

I agree with the Court that Regent Hall has failed to plead a valid *ultra vires* claim, and I join both the Court's judgment and its thoughtful opinion. I also am mindful that the inscription on The University of Texas campus highlighted in one of today's separate writings, "ye shall know the truth and the truth shall make you free,"[2] is much more than an inspirational musing chiseled in stone. These sacred words originating in holy scripture, so appropriately utilized by institutions

---

[1] Ralph Waldo Emerson, LECTURES AND BIOGRAPHICAL SKETCHES 141 (1884).

[2] *John* 8:32 (King James).

of higher learning to promote academic freedom and the power of learning, undoubtedly have broad import in a democratic society. Transparency begets accountability.

Also critically important, both as a general matter and in the context of this case, are individuals' rights to choose when and under what circumstances to share private information about themselves with others. Consistent with this principle, federal law protects the confidentiality of information students disclose to educational institutions. *See generally* Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g.

I write separately to stress the importance of both of these foundational tenets, and to acknowledge that The University of Texas System has the responsibility to abide by both. For ultimately, "[c]onfidentiality and transparency are not mutually exclusive, but rather two sides of the same coin."[3]

\* \* \* \*

Universities play a significant role in shaping our society. These institutions of higher learning are beacons of light, not only serving to educate our populace and to test novel theories that have the potential to improve society in a myriad of ways, but also shining as examples of excellence for generations to come. With this position comes the responsibility to uphold the highest standards of integrity.

So when the Kroll Report was published, revealing that a small number of applicants to UT–Austin's undergraduate program who had been monitored by the President's office were admitted even though their qualifications were below the norm in terms of admission criteria,

---

[3] Holger Stark & Marcel Rosenbach, *Interview with German Interior Minister Thomas de Maizière*, Spiegel Online (Dec. 20, 2010), http://www.spiegel.de/international/germany/spiegel-interview-with-german-interior-minister-wikileaks-is-annoying-but-not-a-threat-a-735587.html.

members of both the university community and the public at large were justifiably concerned about the potential for improper influences on the admissions process. Although the percentage of applicants whose qualifications raised questions was quite low[4] and the Kroll Report concluded the admissions practices appeared to have violated no existing law, rule, or policy, this flagship university is held to the utmost professional standards. Therefore, as a result of the report, UT–System Chancellor William McRaven convened a blue-ribbon panel to review the admissions process, and the Board of Regents subsequently adopted a new admissions policy.

Moreover, when Regent Wallace Hall requested access to the documents underlying the report, the Board granted the request subject to FERPA's mandatory privacy restrictions, turning over tens of thousands of pages of partially redacted material. In doing so, the Board fulfilled both its obligation to disclose the requested information and its duty to comply with federal privacy laws, which required a decision to be made about what was and what was not protected information. Educational institutions are charged with the responsibility to exercise discretion in ensuring their compliance with FERPA. *See* 34 C.F.R. § 99.32(a) (requiring educational institutions to maintain, for "each request or disclosure" of a student's education records, a record that includes the "parties who have requested or received personally identifiable information from the education records" and the "legitimate interests the parties had in requesting or obtaining the information"). This necessarily includes the process of determining when personally identifiable

---

[4] From 2009 to 2014, UT–Austin admitted a total of 91,247 freshmen students (44,293 of whom enrolled at the University) out of 207,350 applicants. *Common Data Set*, UNIV. OF TEX. AT AUSTIN, https://sps.austin.utexas.edu/sites/ut/IRRIS/Pages/CDS.aspx. The Kroll Report found that, during this time frame, 73 students being monitored by the President's office were admitted despite having grades and test scores substantially below the median for admitted students. This amounts to approximately .036 of 1% of those who applied, .08 of 1% of those admitted, and .16 of 1% of those who enrolled.

3

student information may be properly disclosed without the student's or parent's consent. This task was assigned to Chancellor McRaven.

The discretion committed to educational institutions in complying with FERPA is exemplified by the parameters of the exception on which Regent Hall relies to request access. To that end, FERPA does not allow disclosure of protected student information to institutional officials based solely on hierarchy or position. Instead, FERPA allows an institution to disclose protected information only to those "school officials . . . who have been determined by such . . . institution to have legitimate educational interests." 20 U.S.C. § 1232g(b)(1)(A). Nor does FERPA permit disclosure to one entity to justify disclosure to another. With each revelation, the student's privacy rights must be considered anew, and an independent determination must be made that disclosure is justified on its own terms. *See* 34 C.F.R. § 99.32(a). Further, the administrative regulations implementing FERPA do not elaborate on what constitutes "legitimate educational interests." *See id.* § 99.31(a)(1)(i)(A). The Secretary of Education has expressly declined to provide more definitive guidance, explaining that "[e]ach educational agency and institution must establish its own criteria, according to its own procedures and requirements, for determining when its school officials have a legitimate educational interest in a student's records." Family Educational Rights and Privacy, 53 Fed. Reg. 11,942, 11,955 (Apr. 11, 1988) (discussion by Office of the Secretary of Education). FERPA thus demands that these determinations be fact specific so that protection of this information is maximized.

The privacy interests underlying FERPA cannot be overstated. Students trust universities with a plethora of personal information. Some of that information, such as social security numbers, is specifically required as part of the application process. But students may also choose to

4

volunteer sensitive and potentially embarrassing information about themselves, perhaps in a personal essay, that they are not otherwise required to reveal. These students should feel comfortable in the knowledge that this information is seen only by those with a legitimate reason under FERPA.

No one disputes that Regent Hall has a legitimate educational interest in the Kroll documents generally. But, he assumes that this interest necessarily encompasses *all* the sensitive, personally identifiable information in those documents that unquestionably is protected by FERPA. As Chancellor McRaven argues, Regent Hall never attempted to articulate a legitimate interest in any specific information. While I agree with the Court that we need not reach the issue of whether Chancellor McRaven properly applied FERPA, I cannot fault his refusal to accept Regent Hall's *carte blanche* approach in light of the privacy interests at stake.[5] Compliance with FERPA, particularly its restrictions on disclosure of protected information to school officials, is a matter of internal governance and is committed to the institution's discretion. Today the Court appropriately determines that, as it stands, the law does not allow courts to interfere with the exercise of that discretion.

The University of Texas cannot pick and choose when to comply with its legal obligations. In this case, the System's chancellor complied with his responsibilities and the Board of Regents' directive by producing the information requested by Regent Hall in a manner that would safeguard FERPA-protected data. Chancellor McRaven thus acted well within his authority and, in doing

---

[5] Regents have the statutory responsibility to "set campus admission standards," TEX. EDUC. CODE § 51.352(d)(4), but they have no role in individual admission decisions. In light of the privacy rights of the individual students involved, in my view, Regent Hall would not have been able to articulate a "legitimate educational interest" in complete access to all unredacted documents. However, he might have been able to express such an interest in some of those documents.

5

so, assured students that the trust they place in the System to protect the privacy of their records is well founded.

 

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** January 27, 2017

6